UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
SEP 1 0 2024
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

---

ADAM J. LAFFERTY,

              Plaintiff,

        v.                                              23-CV-358 (JLS)

BARRY VIRTS, Wayne County Sheriff,
JAMES MILLER, Lieutenant, ROBERT
DINIERI, KOEBERLE, Sergeant, V.
CARR, Sergeant, E. CARR, Correction
Officer, R. ORLOPP, Correction Officer,
J. VANLEUWEN, Correction Officer,
COMPTON, Sergeant, C.O. SPIEL, C.O.
DYSON, C.O. OMALLY, C.O.
DEMIANENKO, and NEW YORK
STATE OFFICE OF THE ATTORNEY
GENERAL,

              Defendants.

---

## **DECISION AND ORDER**

*Pro se* plaintiff Adam J. Lafferty, a prisoner currently confined at the Five

Points Correctional Facility ("Five Points"), filed this action seeking relief under 42

U.S.C. § 1983. Dkt. 1. Lafferty filed a motion for leave to proceed *in forma pauperis*

("IFP"), Dkt. 2, with a signed authorization, Dkt. 3.

After Lafferty filed his complaint, Dkt. 1, he filed several letters and motions,

Dkt. 4; Dkt. 5; Dkt. 6; Dkt. 14; Dkt. 23; Dkt. 29; Dkt. 30. The allegations in the

initial complaint assert claims against Wayne County Jail[1] ("WCJ") officials and the attorney initially appointed to represent Lafferty in his criminal case.  The letters and motions also make allegations against Five Points officials.[2]

Lafferty has submitted requests for injunctive relief, Dkt. 4; Dkt. 5; Dkt. 6; Dkt. 13; Dkt. 29; Dkt. 30, to which Defendants have filed responses, Dkt. 12; Dkt. 19; Dkt. 32.  Despite being granted extensions of time, Lafferty has not filed a reply. *See* Dkt. 24; Dkt. 34; Dkt. 36.  Lafferty has also requested appointment of counsel. *See* Dkt. 1 at 31; Dkt. 6 at 4.

Because Lafferty has met the requirements of 28 U.S.C. § 1915(a), Dkt. 2, and filed the required authorization, Dkt. 3, the Court grants him permission to proceed IFP.

For the reasons that follow, Lafferty's requests for injunctive relief, Dkt. 4; Dkt. 5; Dkt. 6; Dkt. 13; Dkt. 29; Dkt. 30, and for appointment of counsel, Dkt. 1 at 31; Dkt. 6 at 4, are denied without prejudice.  Lafferty's claims against Robert DiNieri ("DiNieri"), and his claims alleging interference with the prison grievance process, are dismissed without leave to amend under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  Claims seeking monetary damages against the Five Points Defendants, in their official capacities, are dismissed pursuant to the Eleventh Amendment,

---

[1] Lafferty refers to the "Wayne County Correctional Facility."  The Court assumes he is referring to the Wayne County Jail as there is no institution named the Wayne County Correctional Facility in Wayne County, New York.

[2] The Court considered all factual allegations raised in the initial complaint, as well as additional allegations raised in supplemental documents.

without leave to amend.  All other claims are dismissed under 28 U.S.C. §§
1915(e)(2)(B) and 1915A(b), unless Lafferty files an amended complaint curing the
deficiencies identified below.

## DISCUSSION

### I.   LEGAL STANDARDS

#### A.   Initial Review under 28 U.S.C. §§ 1915 and 1915A

Because Lafferty is a prisoner proceeding IFP, the Court must conduct an
initial review of his complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)–(b).
Sections 1915 and 1915A "provide an efficient means by which a court can screen
for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d
Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  A court shall
dismiss a complaint in a civil action in which a prisoner seeks redress from a
governmental entity, or an officer or employee of a governmental entity, if the court
determines the action "(1) is frivolous, malicious, or fails to state a claim upon
which relief may be granted; or (2) seeks monetary relief from a defendant who is
immune from such relief."  28 U.S.C. § 1915A(a)–(b); *see also* 28 U.S.C.
§ 1915(e)(2)(B) (setting forth identical criteria for dismissal).  When evaluating a
complaint, a court must accept all factual allegations as true and must draw all
inferences in the plaintiff's favor.  *See Larkin v. Savage,* 318 F.3d 138, 139 (2d Cir.
2003) (per curiam); *see also King v. Simpson,* 189 F.3d 284, 287 (2d Cir. 1999).

### B.    42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff "must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875–76 (2d Cir. 1994)). Section 1983 "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under Section 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, the theory of *respondeat superior* is not available in a Section 1983 action. *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). There is "no special rule for supervisory liability." *Tangreti v. Bachmann,* 983 F.3d 609, 618 (2d Cir. 2020). Rather, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions . . . violated the Constitution." *Id.*

### C.    Leave to Amend

Generally, a court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal, "unless [it] can rule out any possibility, however

unlikely . . . , that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks and citation omitted). But a court may deny leave to amend pleadings when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Ruffolo v. Oppenheimer* & Co., 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive[ ] . . . it is not an abuse of discretion to deny leave to amend.").

## II.  INITIAL REVIEW

### A.    Claims Arising from Events at Wayne County Jail

Lafferty alleges that, on August 24, 2019, he was arrested and charged with two counts of burglary. Dkt. 1 at 14 ¶ 13. Attorney Robert DiNieri ("DiNieri") was assigned to defend Lafferty in his criminal case. *Id.* ¶ 16. When DiNieri visited Lafferty at WCJ on August 26, 2019, Lafferty told DiNieri that he wanted to appear and testify at his preliminary hearing. *Id.* ¶ 18. DiNieri agreed not to waive Lafferty's right to appear and testify at the hearing; however, Lafferty subsequently learned that DiNieri waived Lafferty's right to appear and testify. *Id.* at 15 ¶¶ 19–22.

From August 26, 2019, until "at least" September 5, 2019, while incarcerated at WCJ, Lafferty "was repeatedly denied" writing paper, copies, notary public services, legal phone calls to seek an attorney of his choice, and law library access. *Id.* at 16 ¶¶ 23–26. Correction officers told Lafferty he "could not obtain" such materials because he was not indigent. *Id.* at 17 ¶ 28; 89. However, Lafferty was

not able to order supplies from the commissary "until at least September 16, 2019." *Id.* at 17 ¶ 29. Until he was able to place a commissary order, Lafferty traded food from his meal trays to other inmates in exchange for "writing paper and stamped envelopes." *Id.* at 25 ¶ 65. Lafferty did not receive notary services until approximately September 25, 2019, "because [WCJ] does not have ready access to an available notary public." *Id.* at 20 ¶ 39.

The law library at WCJ contained only out-of-date books and one computer with Westlaw-access. *Id.* at 16 ¶ 27. The provision of only one such computer was insufficient given the number of inmates who wanted to access Westlaw. *Id.* at 16–17.

When Lafferty asked to be allowed to phone attorneys to seek representation, correction officials told him WCJ policy prohibited inmates from calling attorneys other than the attorney appointed by the court or Bruce Chambers,[3] the attorney in charge of assigning counsel for indigent defendants. *Id.* at 20 ¶ 41; 26 ¶ 71.

During his September 17, 2019 grand jury proceedings, Lafferty was "forced" to be represented by DiNieri, despite his conflict with DiNieri regarding the waiver of his right to testify at his preliminary hearing. *Id.* at 27 ¶ 73. Because Lafferty received ineffective assistance of counsel, he was "forced to plead guilty." *Id.* at 30 ¶ 77.

---

[3] Mr. Chambers is not a party to this action.

1.   <u>Statute of Limitations</u>

As an initial matter, it appears that the claims arising from events at WCJ are likely barred by the statute of limitations.

"New York's three year statute of limitations under N.Y. Civ. Prac. L. & R. 214(2) [("N.Y. CPLR")] governs [Section] 1983 actions brought in federal district court in New York." *Jewell v. County of Nassau*, 917 F.2d 738, 740 (2d Cir. 1990). Furthermore, federal courts apply the relevant State's rules for tolling the limitations period unless they are "inconsistent" with federal law. *See Bd. of Regents of Univ. of State of New York v. Tomanio*, 446 U.S. 478, 486–87 (1980). New York has codified the circumstances under which a statute of limitations may be tolled. These include, *inter alia*, periods during which: (1) the commencement of an action has been stayed by court order or by statute, N.Y. CPLR § 204(a); (2) a dispute that had been submitted to arbitration, but is ultimately determined to be non-arbitrable, N.Y. CPLR § 204(b); (3) the defendant is outside New York when and after a claim accrues against him, N.Y. CPLR § 207; and (4) the plaintiff is disabled by infancy or insanity when and after his claim accrues, N.Y. CPLR § 208. *See Jewell*, 917 F.2d at 740 n.1.   Federal law determines the date a claim accrues. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007).

Even though accrual dates vary depending on the claim asserted, *see Reed v. Goertz*, 598 U.S. 230, 235–37 (2023), assuming any claim arising from events at WCJ accrued on Lafferty's last day there, excluding tolling, that claim, along with

all previously accruing claims, would be untimely.[4]  Because there is no indication

that any tolling provisions apply to Lafferty's claims, it appears that no claims

arising from events at WCJ could be timely.  But because litigants are not required

"to anticipate potential affirmative defenses, such as the statute of limitations, and

to affirmatively plead facts in avoidance of such defenses," *Abbas*, 480 F.3d at 640

(citing *Jones v. Bock*, 549 U.S. 199 (2007)), he ought to be mindful of limitations

periods when drafting his amended complaint.

    2.   <u>Claims Against DiNieri</u>

Lafferty has named his court-appointed attorney in his criminal case,

DiNieri, as a Defendant.  Criminal defense attorneys—whether a public defender,

court-appointed attorney, or privately retained counsel—are not persons acting

under color of law "when performing a lawyer's traditional functions as counsel to a

defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 317

(1981) (appointed counsel in a state criminal prosecution is not acting under color of

---

[4] The New York Department of Corrections and Community Supervision's ("DOCCS") incarcerated lookup service indicates that Lafferty transferred into the state prison system on March 12, 2020. *See* "Lafferty, Adam J, DIN: 20B0517" DOCCS Incarcerated Lookup, https://nysdoccslookup.doccs.ny.gov/ (last visited June 6, 2024).  It is likely, therefore, that Lafferty's last day at WCJ was March 12, 2020. Excluding tolling, the statute of limitations for a claim accruing on March 12, 2020, expired on March 12, 2023.  Lafferty signed his complaint one month later, on April 12, 2023.  Dkt. 1 at 32; *Hardy v. Conway,* 162 F. App'x 61, 62 (2d Cir. 2006) (summary order) ("The prison mailbox rule provides that a *pro se* prisoner's [pleading] is deemed filed at the moment he gives it to prison officials . . . . [I]n the absence of contrary evidence, district courts in this circuit have tended to assume that prisoners' papers were given to prison officials on the date of their signing.") (citation omitted).

state law in the ordinary course of conducting the defense); *see also Tower v. Glover*, 467 U.S. 914, 919–20 (1984).

Under Section 1983, liability may attach when a defense attorney conspires with state actors to deprive the plaintiff of his or her constitutional rights. *See Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980) (holding that private parties who conspire with state actors act under color of state law for purposes of Section 1983); *see also McCloud v. Jackson*, 4 F. App'x 7, 9–10 (2d Cir. 2001) (summary order) (counsel could not be held liable under Section 1983 because the plaintiff made no allegations of conspiracy).

Lafferty's allegations regarding DiNieri encompass activities performed in his function as counsel to Lafferty in the criminal case.  Consequently, Lafferty has not plausibly alleged that DiNieri was functioning as a state actor for purposes of this Section 1983 action.  There are no plausible allegations that DiNieri conspired with a state official to deprive Lafferty of a constitutional right, and there is no indication in the complaint that there exist facts based on which Lafferty plausibly could allege a conspiracy.  Accordingly, the claims against DiNieri are dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim, without leave to amend.

### 3.  Right to Counsel of Choice

Lafferty contends that WCJ officials denied him his right to choose his own attorney when they enforced WCJ's policy of prohibiting inmates with assigned counsel from calling attorneys other than the attorney appointed by the court or Mr.

Chambers.  Dkt. 1 at 20 ¶ 41; 26 ¶ 71.  Enforcement of the policy resulted in Lafferty pleading guilty to a crime he did not commit.  *Id.* at 29–30.  He seeks, *inter alia*, one million dollars for "every year of resulting illegal confinement."  *Id.* at 30.

*Heck v. Humphrey* ("*Heck*"), bars damages in Section 1983 cases if a judgment in the prisoner's favor "would necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  512 U.S. 477, 487 (1994).  A damages award on this claim would necessarily imply the invalidity of Lafferty's conviction.  Thus, the claim is subject to dismissal.  Lafferty may amend his complaint to show, if he can, why *Heck* does not bar his counsel-of-choice claim.

    4.   <u>Access to Courts</u>

The United States Constitution "guarantees prisoners the meaningful right of access to the courts."  *Smith v. Donaher*, No. 12-CV-6035, 2013 WL 2531750, at *7 (W.D.N.Y. June 10, 2013) (citing *Lewis v. Casey*, 518 U.S. 343, 350 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977))).  The "right of access to the courts . . . gives rise to a number of derivative rights, including the right to access legal materials to prepare a case, and the right of indigent inmates to be provided with paper and pens to draft legal documents and stamps to mail them."  *Gomez v. Westchester County*, No. 18-CV-00244, 2021 WL 4443379, at *14 (S.D.N.Y. Sept. 28, 2021) (quoting *Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008)).

To plausibly allege a First Amendment denial-of-access-to-the-courts claim against a WCJ official, Lafferty must allege facts showing that: "(l) he suffered an

'actual injury,' (2) to a non-frivolous legal claim, (3) concerning his criminal conviction, habeas corpus petition, or conditions of confinement." *Kaminski v. Semple*, 796 F. App'x 36, 39 (2d Cir. 2019) (summary order) (quoting *Lewis*, 518 U.S. at 349, 352–54). The allegations must also "show that the defendant's conduct was deliberate and malicious." *Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008) (citing *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)). In other words, allegations that a prison official negligently or inadvertently mishandled a prisoner's legal documents, or that the prison engaged in "a practice that is reasonably related to legitimate penological interests," do not support a denial-of-access-to-the-courts claim. *Arce v. Walker*, 58 F. Supp. 2d 39, 44 (W.D.N.Y. 1999). Finally, a plausibly alleged denial-of-access-to-the-courts claim connects the defendant's conduct to the injury suffered by the plaintiff. Broad allegations that prison officials interfered with a plaintiff's attempts to prepare legal documents are not sufficient to proceed to service.

Lafferty alleges that Defendants Koeberle, Carr, Crane, and Compton denied him access to writing paper, copies, notary public services, and access to the law library and books. Dkt. 1 at 24 ¶ 61. Although he was able to file motions with the court, *id.* at 19–20 ¶¶ 35, 40; 77, he could not make copies or serve them, *id.* at 20 ¶ 37.

This claim falls short because Lafferty has not alleged facts that (1) demonstrate an injury to a non-frivolous legal claim concerning his criminal conviction, habeas corpus petition, or conditions of confinement, and (2) connect a

specific WCJ Defendant to that injury.  Accordingly, Lafferty's access to courts claim is subject to dismissal.  Lafferty may amend this claim to allege all the relevant facts, if they exist.

     5.    <u>Equal Protection</u>

The Complaint states in a conclusory fashion that Lafferty was denied the right to equal protection, but does not provide any detail regarding that claim.  Dkt. 1 at 20 ¶ 36.  To state a valid equal protection claim, a plaintiff must allege "that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). The facts alleged must show that "discriminatory intent"—based on an impermissible consideration such as race—was a "motivating factor" of the defendant's conduct. *Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 438 (2d Cir. 2009).  Because the allegations in Lafferty's complaint do not suggest that discrimination was a motivating factor in any of the constitutional violations alleged, any equal protection claim is subject to dismissal.  Lafferty is permitted to amend this claim.

     6.    <u>Official Capacity Claims Against WCJ Officials</u>

Lafferty asserts claims against WCJ officials in their official capacities. Wayne County is the real party in interest for official capacity claims asserted against Defendants employed by the Wayne County Sheriff's Office or WCJ. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

A local government such as Wayne County may not be held liable under Section 1983 unless the challenged action was performed pursuant to a municipal policy or custom. *Monell v. New York City Dep't Soc. Servs.*, 436 U.S. 658, 694 (1978). Municipalities are not subject to Section 1983 liability solely on the doctrine of *respondeat superior*. *Collins v. City of Harker Heights*, 503 U.S. 115, 121 (1992); *Monell*, 436 U.S. at 694.

To hold a municipality liable in a Section 1983 action, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (internal quotation marks omitted); *see also Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) ("In order to establish the liability of a municipality in an action under [Section] 1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy.").

Here, Lafferty alleges that WCJ has a policy that prohibits inmates from calling attorneys—other than the attorney appointed by the court or Mr. Chambers—and that WCJ correction officials enforced that policy against him, preventing him from retaining the counsel of his choice. *See* Dkt. 1 ¶ 41; 26 ¶ 71. Although Lafferty plausibly alleges the first and second elements, he did not adequately allege the third element—denial of a constitutional right. Accordingly, Lafferty's official capacity claims against the WCJ officials are subject to dismissal,

but Lafferty may amend this claim to allege facts that support all the elements of this claim, if possible.

**B.    Claims Arising from Events at Five Points Correctional Facility**

Lafferty alleges that he has "reason to believe that [Five Points] prison officials have been obstructing [his] outgoing mail." Dkt. 5 at 2.  He has been "delayed and prevented from accessing this and other courts for serious violations of [his] rights." *Id.* at 3.  He is "being harassed, threatened and retaliated against by prison officials." *Id.*

On July 3, 2023, Five Points officials, including correction officer ("CO") Hall, allowed another inmate to assault Lafferty. *Id.* at 2; Dkt. 6 at 3; Dkt. 14 at 2–3. Officials ignored Lafferty's request for protective custody, and he was again assaulted on August 19, 2023.  Dkt. 5 at 2.  Guards told other incarcerated individuals about Lafferty's request for protective custody and that Lafferty is a "snitch." *Id.*  Officials are also "not allowing [Lafferty] to file and pursue administrative grievances and are trying to get [him] killed or hurt very bad[ly]." *Id.* at 2–3.

In addition to the July 3 and August 19, 2023 assaults, Lafferty was "beat up" on July 27 and September 6 and 7, 2023.  Dkt. 6 at 1, 3.  Five Points officials have not treated the injuries Lafferty received during the assaults. *Id.* at 1–4. Officials refused to take photos of his injuries and destroyed his "legal work progress." *Id.* at 1, 4–5.  Officials also prevented him from accessing the grievance process.  Dkt. 14 at 3.

14

On September 7, 2023, another inmate raped Lafferty.  Dkt. 6 at 1–2.  After the incident, COs Spiel, Dyson, O'Mally, Demianen, and John Doe did not let Lafferty "get medical."  *Id.* at 2.  Lafferty alleges that prison officials, including CO Schantz, have told other inmates to hurt him, called him a snitch, prevented him from receiving medical care, and filed false misbehavior reports because he has filed grievances and lawsuits.  *Id.* at 3, 5; Dkt. 14 at 2.  He alleges that Sergeants Donahue, Schmitt, and Mcyntyre [sic], several nurse Does, and numerous CO Does, denied him medical care.  Dkt. 14 at 2.

On September 27, 2023, COs Slusser, Fisher, Bedient, Bruce, and Sergeant Jane Doe allowed Lafferty's cellmate "to steal all of [Lafferty's] commissary[-]bought stamps, hygiene, tobacco, and miscellaneous other property."  *Id.* at 3.  Lafferty alleges officers have permitted this conduct on many occasions and that they allow the conduct in order "to harass and retaliate against [him] for filing grievance[s] and lawsuits and attempting to access the courts."  *Id.* at 4.

On November 25, 2023, Lafferty "had a seizure."  Dkt. 29 at 3.  Several officers escorted Lafferty to an infirmary cell where three or four officers "beat [him] punching [him] in [his] body . . . on [his] left side and on [his] leg."  *Id.* at 4.  Although he was "held in infirmary from Saturday 11/25/23 until Monday 11/27/23," he did not receive medical care for the injuries he suffered in the assault.  *Id.*

On December 17, 2023, during the lunch meal run, Lafferty politely asked a CO Doe for the time.  Dkt. 30 at 2.  At first, the Doe officer responded in a rude

manner. *Id.* When Lafferty again asked for the time, the officer responded by
saying:

> Lafferty why the fuck are you even speaking to me, when I have never
> as long as you've known me, ever said [two] words to you, next time I'm
> not even going to say shit, I'll just spray your fuckin ass, so just shut the
> fuck up and don't fucking ever say shit to me again, you['re] just a fuckin
> scumbag inmate [piece] of shit and I swear to God if you ever say
> anything to me again I'll fucking spray your ass.

*Id.* at 3. Lafferty contends this officer Doe, CO Dyson, and others "are harassing
[him] and retaliating against [him] for filing grievances and writing to this court."
*Id.*

On December 21, 2023, when returning from breakfast, a CO John Doe and a
CO Jane Doe "ordered [Lafferty] to submit to a pat frisk." *Id.* at 4. Lafferty had
approximately ten packets of sugar in his pocket. *Id.* Even though COs routinely
allow inmates to take bread and sugar back to their cells, the officers subjected
Lafferty to a strip search. *Id.* During the search the COs "harassed and degraded"
Lafferty and confiscated the sugar packets, Lafferty's ID, and library copy card. *Id.*

"Thereafter, due to serious conflicts, threats and abuse by [his] cellmate,"
Lafferty asked to speak to Lt. Conger. *Id.* Lafferty contends that the "threats and
abuse" by his cellmate escalated "due to staff calling [Lafferty] [fagot,] snitch,
pussy" and because the COs placed the cellmate on restrictions, telling the cellmate
that he was placed on restrictions because Lafferty "like[s] to file grievances so [the
cellmate] has to pay because he's in the same cell with [Lafferty]." *Id.* at 4–5.
Officers encouraged the cellmate to abuse Lafferty and to take Lafferty's money and
his bottom bunk. *Id.* at 5.

After Lafferty reported that his cellmate had struck him in the face "once again," he was permitted to speak to a sergeant but, while he was speaking to the sergeant, COs searched his cell. *Id.* at 6. During the search, the officers unbound all of Lafferty's legal papers, mixed them up, "put[ ] toothpaste all over them," and threw the papers "all over the cell, and outsid[e] of the recreation pen area and then [were] ripping and folding/crumpling it all up and throwing a lot of it into the shower area." *Id.* at 6–7. The officers also took Lafferty's mattress, bedding, and the boxes he used to store his legal papers. *Id.* at 7.

This left Lafferty with "no way to organize, access, or do any of [his] legal work and specifically delaying . . . [his] ability to challenge at least [six] misbehavior reports or mailing the completed Article 78 petition challenging the 7/24/23 Tier II misbehavior report." *Id.* The conduct has also prevented Lafferty from pursuing a direct appeal of his criminal conviction and from filing post-conviction motions. *Id.* at 10. He also "missed the court deadline to file [his] pro se supplemental brief," which was returned to him because it was late. *Id.* at 12.

Officers have allowed Lafferty's cellmates and inmate porters to take his property. *Id.* at 8. Officers have "destroy[ed] or molest[ed]" his legal papers and taken his writing paper and "utensils needed to write." *Id.* The grievance coordinators refuse to process Lafferty's grievances. *Id.* at 9. "Whenever [Lafferty] file[s] grievances or [tries] to go to court they got [him] beat, beat up, cut, stole all [his] property, then deny [him] programs and raped." *Id.* at 10.

17

On December 21, 2023, Lafferty packed his property while his cellmate was using the phone. *Id.* at 11. When the cellmate returned, Lafferty exited the cell with his property and "advised staff [that he] could not stay or live in the cell because [he] was being abused and [his] property would be stolen." *Id.* Officers "forced" Lafferty to return to his cell with his property. *Id.* Lafferty then "wrote a letter to the sergeant requesting protective custody and to please let [him] pack [his] own property because [his] cellmate [would] steal it." *Id.* Officers "again forced" Lafferty "back inside." *Id.* The COs "threw/tossed" Lafferty's papers and property back into the cell. *Id.* at 12. A CO returned and told Lafferty to cuff up and leave his property. *Id.* Lafferty "was then hit twice in the face by [his] cellmate . . . and hit [his] head on the cabinet . . . and the officers broke [his] bucket and property throwing it back in the cell and forcing [him] to go into a dangerous situation." *Id.*

1.   Excessive Force

To plausibly allege an Eighth Amendment excessive force claim, a prisoner must allege that, "(1) the defendant used force against the plaintiff maliciously and sadistically, for the very purpose of causing the plaintiff harm; and (2) the plaintiff suffered some harm as a result of the defendant's use of force." *Heyliger v. Krygier,* 335 F. Supp. 3d 482, 491 (W.D.N.Y. 2018) (citing *Hudson v. McMillian,* 503 U.S. 1, 7–8 (1992)). The central question is "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 7.

18

The first element is "a subjective analysis of the defendant's state of mind at the time of the incident." *Heyliger,* 335 F. Supp. 3d at 491.  Factors relevant to this subjective element include:

> the extent of the injury and the mental state of the defendant, as well as "the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.

*Harris v. Miller,* 818 F.3d 49, 63 (2d Cir. 2016) (quoting *Scott v. Coughlin,* 344 F.3d 282, 291 (2d Cir. 2003)).  Prison administrators "receive 'wide-ranging deference in . . . adopti[ng] and execut[ing] . . . policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Heyliger,* 335 F. Supp. 3d at 492 (quoting *Whitley v. Albers,* 475 U.S. 312, 321–22 (1986)).

As to the second element, a plaintiff must allege that the defendant's "conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions." *Bradshaw v. City of New York*, 855 F. App'x 6, 9 (2d Cir. 2021) (quoting *Harris,* 818 F.3d at 64) (internal quotation marks omitted); *see also Wright v. Goord,* 554 F.3d 255, 268 (2d Cir. 2009) (objective prong "focuses on the harm done, in light of 'contemporary standards of decency'") (quoting *Hudson,* 503 U.S. at 8).

The absence of "serious injury" to a prisoner is relevant, but not dispositive. *DeJesus v. Malloy,* 531 F. Supp. 3d 650, 659 (W.D.N.Y. 2021), *reconsideration denied,* 582 F. Supp. 3d 82 (W.D.N.Y. 2022); *Heyliger,* 335 F. Supp. 3d at 493.  But

"[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy,* 559 U.S. 34, 38 (2010); *see also Greenburger v. Roundtree,* No. 17 Civ. 03295 (PGG) (SLC), 2020 WL 6561598, at *4 (S.D.N.Y. Jan. 16, 2020) ("'When prison officials maliciously and sadistically use force to cause harm,' a plaintiff need not demonstrate significant injury because, in those circumstances, 'contemporary standards of decency always are violated.'") (quoting *Hudson,* 503 U.S. at 9).

Because Lafferty does not identify the Five Points officials that allegedly assaulted him, *see* Dkt. 29 at 4, this claim is subject to dismissal.  In an amended complaint, Lafferty can make the showings that plausibly allege an excessive force claim by: (1) naming or describing the defendant(s) who used force against him; (2) describing the circumstances surrounding the use of force; (3) describing what the defendant(s) did to him that caused his injuries; and (4) describing the injuries he incurred during the incident.

### 2.   Failure to Protect

A plausibly alleged Eighth Amendment claim that a defendant has failed to prevent harm includes facts that demonstrate: (1) "conditions of confinement that objectively pose an unreasonable risk of serious harm to [the plaintiff's] current or future health," and (2) "that the defendant acted with 'deliberate indifference.'" *Vega v. Semple*, 963 F.3d 259, 273 (2d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  Importantly, a plausibly alleged failure-to-protect claim

includes facts that show the defendant knew that the plaintiff faced a substantial risk of serious harm but disregarded that risk "by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

So, for example, in an amended complaint Lafferty's allegation that, on July 3, 2023, CO Hall allowed another inmate to physically assault him must also include facts that show: (1) how CO Hall knew that Lafferty was at risk of being assaulted by the inmate; (2) that CO Hall had a realistic opportunity to intervene and prevent the assault; and (3) that Hall did not take reasonable steps to intervene.

### 3.    Denial of Access to Courts

Lafferty alleges that he has "reason to believe that [Five Points] prison officials have been obstructing [his] outgoing mail." Dkt. 5 at 2. He has been "delayed and prevented from accessing this and other courts for serious violations of [his] rights." *Id.* at 3. During a search of his cell, officers unbound all of Lafferty's legal papers, mixed them up, "put[ ] toothpaste all over them," and threw the papers "all over the cell, and outsid[e] of the recreation pen area and then [were] ripping and folding/crumpling it all up and throwing a lot of it into the shower area." *Id.* at 6–7. The officers also took Lafferty's mattress, bedding, and the boxes he used to store his legal papers. *Id.* at 7. This left Lafferty with "no way to organize, access, or do any of [his] legal work and specifically delaying . . . [his] ability to challenge at least [six] misbehavior reports or mailing the completed Article 78 petition challenging the 7/24/23 Tier II misbehavior report." *Id.* The conduct has also

prevented Lafferty from pursuing a direct appeal of his criminal conviction and from filing post-conviction motions. *Id.* at 10. He also "missed the court deadline to file [his] pro se supplemental brief," which was returned to him because it was late. *Id.* at 12. Officers have allowed Lafferty's cellmates and inmate porters to take his property. *Id.* at 8. Officers have "destroy[ed] or molest[ed]" his legal papers and taken his writing paper and "utensils needed to write." *Id.*

Because Lafferty's allegations fail to identify any specific defendant in relation to this claim, it is subject to dismissal. To plausibly allege a denial-of-access-to-courts claim against a Five Points official, Lafferty's amended complaint must: (1) name or describe the defendant and describe the actions he or she took that hindered Lafferty's access to the courts; (2) identify the non-frivolous legal claim concerning his criminal conviction, habeas corpus petition, or conditions of confinement that was hindered by the defendant's actions; and (3) describe the injury that resulted.

### 4. Retaliation

To state a claim for retaliation under the First Amendment, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

"[F]iling . . . formal prisoner grievances is protected conduct under the First Amendment." *Shariff v. Poole*, 689 F. Supp. 2d 470, 478 (W.D.N.Y. 2010).  Adverse action, defined objectively, is "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill*, 389 F.3d at 381 (quoting *Davis*, 320 F.3d at 353).  A causal connection may be alleged with facts showing: "(1) the temporal proximity of the filing to the grievance and the [adverse] action; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; [or] (4) statements by the defendant regarding his motive for [the adverse action]." *Shariff*, 689 F. Supp. 2d at 479.

Lafferty's broad allegations that Five Points officials are retaliating against him are insufficient to plausibly allege the claim.  His allegations that COs have allowed his cellmate to steal his property and encouraged his cellmate to assault him in order "to harass and retaliate against [him] for filing grievance[s] and lawsuits and attempting to access the courts," Dkt. 14 at 4; Dkt. 30 at 4–5, fall short because they do not include facts that support each element of the claim. Importantly, Lafferty does not make a causal connection between his protected conduct and the specific Defendant's adverse action against him.  To plausibly allege this claim, Lafferty's amended complaint must include the following: (1) the name or description of the defendant against whom the claim is asserted; (2) the protected conduct Lafferty engaged in; (3) the adverse action by the defendant that would deter a prisoner of ordinary firmness from exercising his constitutional

rights; and (4) a causal connection between Lafferty's protected conduct and the defendant's adverse action.

### 5.   Due Process: False Misbehavior Reports

An inmate has no constitutional protection from being falsely written up. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). However, a Fourteenth Amendment due process claim, based on a false misbehavior report, may be alleged by showing that the inmate was disciplined without adequate due process as a result of an allegedly false misbehavior report. *Willey*, 801 F.3d at 63. To allege such a claim plausibly, a plaintiff must demonstrate (1) that he possessed a protected liberty or property interest; and (2) that he was deprived of that interest without constitutionally sufficient due process. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *accord Bangs v. Smith*, 84 F.4th 87, 97 (2d Cir. 2023).

A prisoner's liberty interest is implicated by prison discipline, including SHU confinement, only if the discipline "imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (citing *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004)). In assessing whether discipline imposed an atypical and significant hardship, courts consider both the conditions of confinement and their duration, "since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged

24

interval might both be atypical." *Palmer*, 364 F.3d at 64 (quoting *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999)).

Where the plaintiff "was confined for an intermediate duration—between 101 and 305 days—'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required." *Id.* at 64–65 (quoting *Colon v. Howard*, 215 F.3d 227, 232 (2d Cir. 2000)) (citing *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000)).  This includes "conditions of confinement 'in comparison to the hardships endured by prisoners in [the] general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration.'" *Davis v. Barrett*, 576 F.3d 129, 134 (2d Cir. 2009) (quoting *Welch v. Bartlett*, 196 F.3d 389, 392–93 (2d Cir. 1999)).  In conducting this analysis, courts "examine the actual circumstances of confinement and . . . identify with specificity the facts upon which their conclusions are based." *Id.* (citations omitted).

The second element of a procedural due process claim examines an inmate's "right to notice and a meaningful opportunity to be heard" in the context of a disciplinary hearing.  *LaChance v. Erickson*, 522 U.S. 262, 266 (1998) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).  Inmates appearing at a disciplinary hearing must be provided with: (1) written notice—outlining the charges—at least twenty-four hours before the disciplinary hearing; (2) the right to call witnesses and present documentary evidence; (3) the aid of a staff member or fellow inmate in presenting a defense, if the inmate is illiterate or the issue is

complex to where the inmate needs assistance comprehending the case to prepare for the hearing; (4) an impartial tribunal; and (5) a written statement of the basis for the tribunal's decision. *Wolff v. McDonnell*, 418 U.S. 539, 563–67, 570–72 (1974); N.Y. Comp. Codes R. & Regs. tit. 7, §§ 251-4, 253.6 (2000).

Although Lafferty's allegations that prison officials filed false misbehavior reports against him because he has filed grievances and lawsuits appear to relate to his retaliation allegations, he may also be attempting to assert a due process claim. *See* Dkt. 4 at 2; 14 at 2. To allege the liberty interest element plausibly, Lafferty's amended complaint must allege both the number of days he spent in disciplinary confinement and the conditions of his disciplinary confinement—particularly relevant are facts showing that the conditions he experienced in SHU, or other disciplinary confinement, were "dramatically different" from the ordinary conditions of confinement in both the general population and in SHU/disciplinary confinement. *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996). To allege the notice and opportunity element, Lafferty's amended complaint must allege facts showing that the disciplinary process did not afford him the process due under *Wolff*.

6.   Inadequate Medical Care

An Eighth Amendment inadequate medical care claim that is sufficient to proceed to service includes facts that show how the defendant against whom the claim is asserted was deliberately indifferent to the plaintiff's serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).

A serious medical need "exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).  The Second Circuit has explained:

> medical conditions . . . vary in severity and . . . a decision to leave a condition untreated or not depending on the facts of the particular case.  Thus, a prisoner with a hang-nail has no constitutional right to treatment, but if prison officials deliberately ignore an infected gash, "the failure to provide appropriate treatment might well violate the Eighth Amendment.

*Id.* at 136–37 (quoting *Chance*, 143 F.3d at 702); *see also Banks v. Mannoia*, 890 F. Supp. 95, 99 (N.D.N.Y. 1995) ("The serious medical need requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain.").  Ultimately, "[t]he essential test is one of medical necessity and not one simply of desirability." *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) (quoting *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981)).

Deliberate indifference exists when the defendant "act[ed] with a 'sufficiently culpable state of mind.'" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)).  In other words:

> [a] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Darby v. Greenman,* 14 F.4th 124, 128 (2d Cir. 2021) (quoting *Farmer*, 511 U.S. at 837) (internal quotation marks omitted).  Thus, "not every lapse in prison medical

care will rise to the level of a constitutional violation." *Smith v. Carpenter,* 316 F.3d 178, 184 (2d Cir. 2003); *see also Darby,* 14 F.4th at 128 (holding that a defendant-official's "failure to alleviate a significant risk that he should have perceived[,] but did not[,] does not meet this standard.") (quoting *Farmer,* 511 U.S. at 838).

Lafferty makes numerous allegations of denial of medical care, *see, e.g.,* Dkt. 6 at 1–4; Dkt. 14 at 2; Dkt. 29 at 3–4; but none of his allegations alleges both elements of an inadequate medical care claim against a specific defendant. Thus, for each defendant against whom Lafferty asserts an inadequate medical care claim, his amended complaint must make the two showings as described above—facts describing: (1) Lafferty's serious medical need; and (2) how the defendant was deliberately indifferent to that need.

### 7.   Access to Grievance Process

It is well-settled that "inmates do not have a constitutional right to grievance procedures." *Pine v. Seally,* No. 9:09-CV-1198, 2011 WL 856426, at *8 (N.D.N.Y. Feb. 4, 2011), *report and recommendation adopted in part sub nom. Labib v. Seeley,* No. 9:09-CV-1198, 2011 WL 856421 (N.D.N.Y. Mar. 9, 2011) (accepting and adopting the report and recommendation with the exception of reference to a defendant who had not been served). As well, "a violation of the inmate grievance procedures does not give rise to a claim under [S]ection 1983." *Id.* Generally, an "allegation that a supervisory official ignored a prisoner's letter protesting unconstitutional conduct is not itself sufficient to allege the personal involvement of the official so as to create liability under [Section] 1983." *Cossette v. Noeth,* No. 20-

CV-6045, 2020 WL 8768084, at *3 (W.D.N.Y. June 5, 2020) (internal quotation marks and citation omitted).  If prison officials "ignore a grievance that raises constitutional claims, an inmate can directly petition the government for redress of that claim." *Shell v. Brezniaki*, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005).

There is no constitutional right "to an investigation by government officials . . . and no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved." *Lewis v. Gallivan*, 315 F. Supp. 2d 313, 317 (W.D.N.Y. 2004) (internal quotation marks and citations omitted); *see also Banks v. Annucci*, 48 F. Supp. 3d 394, 414 (N.D.N.Y. 2014) ("The law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials.").  The Due Process Clause does not confer a "right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Banks,* 48 F. Supp. 3d at 414.

Lafferty's allegations that grievance coordinators have refused to process his grievances, *see, e.g.,* Dkt. 30 at 9, do not allege a colorable claim.  Accordingly, to the extent Lafferty intended to assert claims based on the processing of prison grievances, such claims must be dismissed without leave to amend because allegations of grievance procedures not properly followed, or grievances not adequately investigated, do not state a constitutional claim.

8.   <u>Deprivation of Property</u>

Deprivation of property "by a state actor, whether done intentionally or

negligently, will not support a due process claim redressable under [Section] 1983 if

'adequate state post-deprivation remedies are available.'"  *Wahid v. Mogelnicki*, 406

F. Supp. 3d 247, 249 (E.D.N.Y. 2017) (quoting *Davis v. New York*, 311 F. App'x 397,

400 (2d Cir. 2009) (summary order)).  When the deprivation "occurs in the more

structured environment of established state procedures, rather than random acts,

the availability of post[-]deprivation procedures will not, ipso facto, satisfy due

process." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d

877, 880 (2d Cir. 1996) (hereinafter "*HANAC*").

As discussed above, Lafferty's allegations that officials destroyed his legal

papers may state a claim if the destruction impeded his access to the courts.  To the

extent that Lafferty is attempting to assert a claim for other random, unauthorized

deprivations of property, Lafferty's allegations do not state a claim under

Section 1983.  *See HANAC*, 101 F.3d at 882 ("there *is no* constitutional violation

(and no available [Section] 1983 action) when there is an adequate state post[-]

deprivation procedure to remedy a random, arbitrary deprivation of property or

liberty"); *Palmer v. City of New York*, 564 F. Supp. 3d 221, 249–50 (E.D.N.Y. 2021)

(collecting cases concluding that New York has adequate post-deprivation remedies

for deprivations of property by state actors); *Harris v. City of New York*, No. 16-CV-

1214, 2018 WL 4471631, at *10 (E.D.N.Y. Sept. 18, 2018) (observing that a state

law claim in the Court of Claims is an adequate post-deprivation remedy);

*Benjamin v. Town of Islip*, No. 20 CV 56, 2021 WL 8344132, at *10 (E.D.N.Y. Aug. 12, 2021) (collecting cases concluding that an Article 78 proceeding is an adequate post-deprivation remedy), *report and recommendation adopted*, No. 20-CV-56, 2022 WL 1090608 (E.D.N.Y. Apr. 12, 2022).  Accordingly, any claim for deprivation of property, such as consumer goods, must be dismissed.  The Court will nonetheless permit Lafferty to amend to clarify his allegations, if he can, against Five Points officials with respect to interference with his legal papers.

>        9.    Official Capacity

Because he has requested both monetary damages and injunctive relief, it appears that Lafferty intends to sue the Five Points Defendants in both their individual and official capacities.  The Eleventh Amendment bars claims for monetary damages against state defendants in their official capacities.  Therefore, to the extent Lafferty intended to sue the state Defendants in their official capacities for monetary damages, those claims are dismissed without leave to amend.

Unless a state has "waived its Eleventh Amendment immunity or Congress has overridden it . . . a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citation omitted).  Because "a judgment against a public servant in his official capacity imposes liability on the entity that he represents[,]" *id.* at 169 (internal quotation marks and citation omitted), this "rule of immunity extends to cases where the action is in essence one for the recovery of money from the state, even when

individual [state] officials are the nominal defendants," *Williams v. Marinelli*, 987 F.3d 188, 197 (2d Cir. 2021) (internal quotation marks and citation omitted).

A limited exception to the Eleventh Amendment's grant of sovereign immunity exists when a plaintiff seeks injunctive relief against a state official for an ongoing violation of federal law or the Constitution. *See Graham,* 473 U.S. at 167 n.14 (citing *Ex parte Young,* 209 U.S. 123 (1908)). The theory is that, "such a suit is not 'one against the State' and, therefore, is not barred by the Eleventh Amendment." *CSX Transp., Inc. v. New York State Office of Real Prop. Servs.,* 306 F.3d 87, 98 (2d Cir. 2002) (quoting *Ex parte Young,* 209 U.S. at 154)).

Under the *Young* exception, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff "(1) alleges an ongoing violation of federal law; and (2) seeks relief properly characterized as prospective." *Vega v. Semple,* 963 F.3d 259, 281 (2d Cir. 2020).

As the Court previously directed, Lafferty's amended complaint must specify the relief he seeks against each Defendant. Accordingly, the Court will determine the effect of the Eleventh Amendment on any claims for injunctive relief when screening any amended complaint.

## III.   REQUEST FOR APPOINTMENT OF COUNSEL

Lafferty requests appointment of counsel. Dkt. 1 at 31; Dkt. 6 at 4. In deciding whether to appoint counsel, courts first determine whether the indigent person's position seems likely to be of substance and, if the claims meet this threshold requirement, then consider several other factors in making the

determination. *See Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). At this early stage of the proceedings, the Court cannot conclude that Lafferty's position is likely to be of substance. Additionally, Lafferty contends that he has retained an attorney, Cassandra Rohme, but no attorney has entered an appearance on Lafferty's behalf. *See* Dkt. 29 at 4. Therefore, Lafferty's request for appointment of counsel is denied as premature and without prejudice to renewal at a later date.

## IV. REQUEST FOR INJUNCTIVE RELIEF

Lafferty made several requests for injunctive relief. *See* Dkt. 4; Dkt. 5; Dkt. 6; Dkt. 13; Dkt. 29; Dkt. 30. However, these requests are denied because he fails to plausibly allege a claim upon which relief can be granted.

The default rule is that a plaintiff seeking a preliminary injunction must make a clear showing that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1576 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)) (internal quotations removed).[5]

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24; *see also Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir. 1986) (noting that a preliminary injunction is "one of

---

[5] The Court recognizes that the preliminary injunction standard—in the Second Circuit—is somewhat unclear. Thus, the Court applies the test in *Winter*, which the Supreme Court said is the "default rule" for preliminary injunctions. *See Starbucks Corp.*, 144 S. Ct. at 1576.

the most drastic tools in the arsenal of judicial remedies"). As such, "a party seeking preliminary injunctive relief has a heavy burden to sustain." *Dorsett v. Cty. of Nassau,* 762 F. Supp. 2d 500, 534 (E.D.N.Y. 2011) (quotation omitted). Importantly, the movant "must offer proof beyond the unverified allegations of the pleadings." *Allens Creek/Corbetts Glen Pres. Grp., Inc. v. Caldera*, 88 F. Supp. 2d 77, 83 (W.D.N.Y. 2000), *aff'd sub nom., Allens Creek/Corbetts Glen Pres. Grp., Inc. v. West*, 2 F. App'x 162 (2d Cir. 2001). In other words, "[b]are allegations, without more, are insufficient for the issuance of a preliminary injunction." *Kadant, Inc. v. Seeley Mach., Inc.*, 244 F. Supp. 2d 19, 40 (N.D.N.Y. 2003).

Where a plaintiff's claims fail to state a claim upon which relief can be granted and are being dismissed, the plaintiff's motion for injunctive relief must be denied. *Broecker v. New York City Dep't of Educ.*, No. 23-655, 2023 WL 8888588, at *3 (2d Cir. Dec. 26, 2023) ("[B]ecause the underlying claims have been dismissed, [the court denied] as moot plaintiffs' challenges to the district court's denial of their motion for a preliminary injunction."). Thus, because Lafferty's filings do not, at this stage, plausibly allege any claim, his requests for injunctive relief are denied without prejudice.

## CONCLUSION

Because Lafferty has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed the required authorization, his request to proceed IFP (Dkt. 2) is granted. Lafferty's requests for injunctive relief and for appointment of counsel are denied without prejudice.

Lafferty's claims against DiNieri, and claims alleging interference with the prison grievance process, are dismissed without leave to amend under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  Claims seeking monetary damages against the Five Points Defendants, in their official capacities, are dismissed without leave to amend pursuant to the Eleventh Amendment.

As to his remaining claims, they are dismissed; Lafferty is granted leave to amend and must file an amended complaint, **by October 15, 2024**, in which he includes the necessary allegations as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.  If Lafferty fails to file an amended complaint, this action will be dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

All claims asserted in an amended complaint—whether against WCJ officials or Five Points officials—should allege facts that support all the elements of each claim asserted as outlined above.  While allegations should be "simple, concise, and direct," Fed. R. Civ. P. 8(d)(l), an amended complaint must allege enough facts to give *each defendant* fair notice of the claims asserted and the grounds on which the claims rest.  *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  The amended complaint must therefore, at a minimum, include: (1) facts indicating who harmed Lafferty and how, when, and where the injury occurred; (2) a description of the injury Lafferty suffered; (3) the relief Lafferty requests; and (4) why he believes he is entitled to that relief.  If Lafferty does not know the name of a defendant, he may refer to that defendant as "John Doe" or "Jane Doe."  In naming Doe

defendants, Lafferty should allege as much identifying information as he can about them to assist with ascertaining their identities.

The Court will not consider any other filings when screening the amended complaint. As such, Lafferty must include all allegations against each Defendant so that the amended complaint stands alone as the only complaint to be answered in this action.

Lafferty is cautioned that the Court may dismiss, without further explanation, any claims in an amended complaint that do not comply with the Court's instructions or that fail to cure the deficiencies identified above. *See Williams v. Baxter*, No. 22-CV-6117, 2023 WL 5584345, at *3 (W.D.N.Y. Aug. 29, 2023) (after apprising the plaintiff of the deficiencies in his complaint and putting him on "the plainest notice of what was required," the court denied a second opportunity to amend) (quoting *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978)).

This order contains all the information Lafferty needs to draft an amended complaint and the Court is granting Lafferty ample time to draft his amended complaint. Accordingly, and because of Lafferty's previous history of delay, *see* Dkt. 38, the Court will not look favorably upon any motion for extension of time to file an amended complaint.

## **ORDER**

IT HEREBY IS ORDERED that Lafferty's motion to proceed IFP (Dkt. 2) is granted; and it is further

ORDERED that Lafferty's requests for appointment of counsel and injunctive relief are denied without prejudice; and it is further

ORDERED that Lafferty's claims against DiNieri and claims alleging interference with the prison grievance process are dismissed without leave to amend under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) and the Clerk of Court shall terminate DiNieri from the case; and it is further

ORDERED that the claims seeking monetary damages against the Five Points Defendants, in their official capacities, are dismissed pursuant to the Eleventh Amendment without leave to amend; and it is further

ORDERED that Lafferty is granted leave to file an amended complaint as directed above by no later than **by October 15, 2024**; and it is further

ORDERED that the Clerk of Court is directed to send to Lafferty this order, a copy of each the following documents: Dkt. 1, Dkt. 4; Dkt. 5; Dkt. 6; Dkt. 14; Dkt. 23; Dkt. 29; Dkt. 30, a blank Section 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that, in the event Lafferty has failed to file an amended complaint by the deadline imposed by the Court, this action shall be dismissed without further order of the Court and the Clerk of Court shall close this case; and it is further

ORDERED that, in the event the Complaint is dismissed because Lafferty has failed to file an amended complaint, this Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith

and leave to appeal to the Court of Appeals as a poor person is denied.  *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure; and it is further

ORDERED that, pursuant to Western District of New York Local Rule of Civil Procedure 5.2(d), Lafferty must notify the Court in writing if his address changes.  Failure to do so may result in dismissal of the action.

SO ORDERED.

Dated:     September 10, 2024
           Buffalo, New York

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

38